DREW, J.
| iWinford Jay Moore was tried by jury and convicted of aggravated rape of a child under 13. La. R.S. 14:42(A)(4). He appeals his conviction and life sentence upon the sole ground of ineffective assistance of counsel. We affirm.
I. PRETRIAL CHRONOLOGY OF EVENTS
• On October 8, 2009, the defendant was arrested for aggravated rape.
• On January 21, 2010, he was charged by bill of information with sexual battery of a child under the age of 13. La. R.S. 14:43.1(A) and (C)(2)(16).
• On February 2, 2010, he waived formal arraignment and entered a plea of not guilty, through his court-appointed Indigent Defender Board (“IDB”) attorney.
• In June of 2010, the state filed a rule to allow DNA testing, even though the entire sample would be expended by the testing.
• On September 24, 2010, the defendant filed a pro se motion to quash, arguing that the evidence did not support the crime charged and that the state had failed to timely institute prosecution within 60 days of his arrest.
• In November 2010, attorney Ivan Daigs withdrew; IDB attorney Gina Jones was appointed.
• Four months later, Jones withdrew; attorney Robert Sharp was appointed.
• Two months later, Sharp withdrew; attorney Bruce Hampton was appointed.
• On July 12, 2011, Hampton requested that the DNA evidence be tested by an independent lab, and stated that he was informed by the IDB that there would be funding available to do the testing and the state agreed. Counsel agreed that prescription was interrupted or suspend *1268 ed while the evidence was being tested. The matter was continued.
75 The next month, the defendant filed pro se motions to quash and for a preliminary examination.
• On September 13, 2011, attorney Hampton adopted defendant’s pro [ 9se motion for preliminary examination and requested that it be refixed to another date. The court granted a continuance over the state’s objection and denied defendant’s motion to quash. The defendant rejected a plea offer. The state noted that the charge might be amended to aggravated rape.
• On November 15, 2011, Hampton withdrew; IDB attorney Forrest Moegle was appointed.
• On February 22, 2012, defendant filed a pro se motion to quash, arguing that more than two years had passed from date of institution of prosecution.
• On April 20, 2012, Moegle filed a motion for continuance, claiming that he needed more time to prepare for trial and to seek other sources of funding for additional DNA testing.
• Three days later, the court granted a continuance over the state’s objection;
• The state advised that it would have the DNA testing; defendant objected.
• On September 5, 2012, the state filed an indictment charging the defendant with aggravated rape of a child under 13. La. R.S. 14:42(A)(4).
• On September 11, 2012, the defendant pled not guilty to the charged offense.
• On September 18, 2012, the defendant requested that Moegle be relieved as his lawyer, claiming that Moegle had waived his right to a jury trial.
• Two days later, Moegle moved for a continuance, noting that the state had just provided him with notice of potential exculpatory evidence relative to Dr. Landon Smith’s reports of his examinations of the victim.
• Four days later, the court granted a continuance, over the state’s objection.
• On October 9, 2012, the court held a hearing to address the defendant’s various pro se motions. The court denied defendant’s motion to relieve Moegle, since the lawyer had in fact reserved defendant’s right to a jury trial. As counsel stated that he did not want to adopt the defendant’s other motions, the court did not rule on the motions.
|s* Weeks later, the court dismissed all pro se motions not adopted by counsel.
II. TESTIMONY
DeSandra Burks, mother of BB, testified that:
• in 2009, BB was 11 years old;
• DeSandra and BB lived with Lovie Burks, DeSandra’s aunt;
• Their family had known the defendant for years;
• On October 4, 2009, DeSandra, BB, Angela Williams, and the defendant were visiting a friend, when she asked the defendant to take BB home;
• he left with BB, but did not bring her home until a couple of hours later;
• unlike earlier, the child had a cold drink, candy, gum, and money;
• BB said the defendant put his privates in her and played with her breasts;
• when BB pulled down her clothes, her underwear was wet; and
• she and BB’s father took BB to North Louisiana Medical Center.
Valerie Renee Skipper, an expert in sexual assault examination and a registered nurse, examined BB at the hospital, and testified that:
• she observed that BB had special needs;
*1269 • BB’s aunt told her that BB had a learning disability;
• BB was very open and had good eye contact with her;
• when she smiled, BB would smile back at her;
• she saw no physical injuries,[1] but BB complained of pain to her genital area;
• there was a white gel-like substance in BB’s panties; and
14» she put all DNA samples into a personal evidence recovery kit (“PERK”).
Deputy Matt Sims received the PERK from Skipper and took the evidence to the sheriffs office. Later, deputies Stephen Williams and Matt Shively transported all the evidence to the North Louisiana Crime Lab for testing.
Lt. George Webb of the Lincoln Parish Sheriffs Office testified that:
• he met with BB and her family on October 5, 2009;
• because he saw that BB was “mentally challenged,” they asked Dr. Sally Thig-pen of the Pine Hills Advocacy Center to conduct a forensic interview;[2]
• after the interview, Lt. Webb showed BB a photographic lineup of six males, and asked BB to pick the man who had sexually assaulted her;
• BB immediately identified the defendant; and
• he obtained a warrant to search the defendant’s white Cadillac[3] and a warrant to take a sample of the defendant’s DNA.
BB, age 14 at trial, did not testify about the rape, but answered questions about her daily routine at school. She confirmed that she understood the difference between the truth and a lie. The video of BB’s interview with Dr. Thigpen was played for the jury.[4] BB confirmed | severything on the video.
Debra Gale Jenkins, BB’s aunt and current legal guardian, testified that BB attends Ruston Junior High School, where she is in a special needs class but goes into a generalized population for physical education and other activities. Debra stated that BB rides the bus to school, can find her way around the school, does not need assistance at lunch, and has friends at school.
Barry Amanuel, manager of the Stop and Shop Grambling Junction, testified that the defendant is a regular customer. On the day in question, BB came in by herself, bought some candy, and walked back to the defendant’s vehicle.
*1270 Adriana Perez, an expert in DNA analysis, testified that:
• the DNA profile obtained from the cutting of the crotch area of BB’s panties was consistent with being a mixture of DNA from at least two individuals;
• the defendant could not be excluded as a donor;
• the DNA profile was 291 trillion times more likely to be a mixture of DNA from BB and the defendant than a mixture of DNA from BB and an unknown, unrelated individual; and
• the defendant could not be excluded as a donor of DNA obtained from the perineal and external genitalia swabs.
The defendant did not testify. After the verdict, the jurors were not polled.
On December 12, 2012, at a sentencing hearing, the trial court noted that the evidence overwhelmingly supported the conviction.
|fiThe defendant said he wanted to make a statement. He presented a note, upon which nine words were written.[5] No grounds were listed in the document. Trial counsel did not adopt defendant’s motions/notes, which were denied.
The court sentenced the defendant to life imprisonment at hard labor.[6]
The defense did not file a motion to reconsider the sentence.
DISCUSSION

Ineffective Assistance of Counsel

The defendant claims ineffective representation because his lawyers failed to:
• promptly press the case to trial;
• file pretrial motions;
• secure independent DNA tests;
• interview a potential exculpatory witness;
• be competent or prepared;
• subpoena witnesses;
• adopt his pro se motions;
• thoroughly cross-examine the state’s witnesses; [7]
• conduct themselves so as not to allow the state to increase the charge 17from sexual battery to aggravated rape, during the time that the sexual battery case should have prescribed for failing to bring it to trial on a timely basis;
• preserve his right to a speedy trial on the original charge; and
• investigate significant discrepancies in the evidence.
The state responds that:
• the record is insufficient for this court to address the defense’s claim of ineffective assistance of counsel, and notes that such claims are more properly raised in an application for post-conviction relief;
• each complaint can be explained as a strategic decision by counsel; and
*1271 • delays usually benefit the defense, more so with lay witnesses, and defense counsel may have hoped that the minor victim’s testimony would change or that other witnesses would become unavailable.
Our law on the review of ineffective assistance claims is well settled.[8]
*1272 | ¿Failure to pursue pretrial motions
The defendant claims that his attorneys were ineffective in failing to file a motion to preserve or test the state’s evidence. Tellingly, the defendant makes no claim that the scientific testing was in any way compromised.

Failure to interview a potential exculpatory witness

The defendant urges that his lawyers were ineffective in failing to interview and/or subpoena a potential exculpatory witness who told Lt. Webb that he did not see a white Cadillac in the area when the alleged crime occurred. Although the failure to interview known witnesses may constitute ineffective assistance of counsel, there is no evidence in this record to back up that claim. State, v. Butler, 41,985 (La. App.2d Cir.6/20/07), 960 So.2d |91208, writ denied, 2007-1678 (La.5/9/08), 980 So.2d 685. This claim falls stunningly short, considering the DNA evidence at trial.

No independent forensic DNA testing

 Defendant argues that his attorneys should have pursued independent forensic DNA testing, even though there is no suggestion that the testing conducted was incomplete or suspect in any way. Mere conclusory statements are insufficient to establish a claim of ineffective assistance of counsel. See State v. Celestine, 2011-1403 (La.App.3d Cir.5/30/12), 91 So.3d 573. The defense has failed to show that his lawyers were deficient in failing to pursue independent DNA testing, or that such testing would have changed the outcome of this case.

Waiving delays, not seekiny a speedy trial, not seeking to quash the charge because of trial delays, resulting in a life sentence for a more serious crime

On February 22, 2012, the defendant filed a pro se motion to quash, arguing that more than two years had passed from the date of institution of prosecution. Our law on the review of these issues is well settled.[9]
In this case, prosecution was instituted by bill of information on January 21, 2010. Thus, the state had until January 21, 2012, to commence trial. La. C. Cr. P. art. 578(2). The defendant filed his own pro se motions to quash on September 24, 2010, and August 8, 2011, suspending the time | inlimit for prosecution for almost one year, until September 13, 2011, when the motions were denied. Defense counsel also requested several continuances, which were granted, and there is no indication that such continuances were improper.
The filing and pursuit of pretrial motions are part of an attorney’s trial strategy, and counsel is not required to engage *1273 in efforts of futility. State v. Shed, supra. The trial began December 3, 2012, well within the acceptable delays.[10]
In addition, the district attorney has complete authority to amend bills of information and indictments, both as to form and substance, before trial. La. C. Cr. P. art. 487; State v. Neslo, 433 So.2d 73 (La.1983).

Failure to rule on motions and failure of counsel to adopt his motions

No objection to the trial court’s dismissal of the defendant’s frivolous pro se motions was made. Accordingly, the issues may not be complained of on appeal. This issue is more properly raised in an application for post-conviction relief.
In State v. Melon, 95-2209 (La.9/22/95), 660 So.2d 466, the Louisiana Supreme Court held that trial courts must accept and consider filings from represented defendants in a pre-verdict context unless doing so will lead to confusion at trial. Here, however, the defendant fails to specify which motions, other than the motion to quash, should have been adopted. He shows no prejudice.

Failure to pursue a preliminary examination

We note that when the motion for a preliminary examination wasJjjfiled, there was no indictment, though an indictment was later rendered. There is no right to a preliminary hearing after the presentation of an indictment.[11] The district attorney has full authority to amend bills of information and indictments, both as to form and substance, at any time before trial. La. C. Cr. P. art. 487; Neslo, supra.

Inexperience and poor performance of his fifth lawyer

The defendant objects to his lawyer’s comments during voir dire:
Good afternoon. And I am Forrest Moegle and I’ve been in court appointed to represent Mr. Moore. And I’ll be honest with you, this is the first time that I have picked a jury and sat in the first chair. So, if I seem to be fumbling around because I’m nervous, that’s because I am nervous.
There is no showing that Moegle’s statement to the potential jurors during voir dire had any effect on the proceedings. Mere conclusory statements are insufficient to establish a claim of ineffective assistance of counsel.

Failure to pursue discrepancies, and related poor cross-examination

Defendant argues that his attorney was ineffective in failing to ask certain questions on cross-examination of Deputy Sims, BB, DeSandra, and Lovie Burks.
Cross-examination is a strategy decision. This court affords great deference to trial counsel’s tactical decisions and trial strategy. State v. Grant, 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823, writ de *1274 nied, 2007-1193 (La.12/7/07), 969 So.2d 629; State v. Mitchell, 44,008 (La.App.2d Cir.2/25/09), 4 So.3d 320, writ denied, 2009-0718 (La.2/12/10), 27 So.3d 841. Defendant has failed to reveal how the trial outcome would have differed had certain questions been asked.

The photo lineup

Defendant finds his lawyer ineffective in failing to file a motion to suppress the photographic lineup, though he alleges no facts justifying suppression. He does not assert that the lineup was suggestive or that there was a substantial likelihood of misidentification. See State v. Martin, 595 So.2d 592 (La.1992); State v. West, 561 So.2d 808 (La.App. 2d Cir. 1990), writ denied, 566 So.2d 983 (La. 1990). He does not show a reasonable probability that but for counsel’s failure to file a motion to suppress, the result of the trial would have been different.

Speculations of a law officer about the lack of forensic evidence in the car

The defense claims that the defendant’s attorney was ineffective in failing to object to Lt. Webb’s speculation as to why no evidence was found in the defendant’s car and in failing to ask him what testing procedures were used during cross-examination. On direct examination, Lt. Webb was asked whether he found anything of evidentiary value through his search of defendant’s Cadillac, and responded as follows:
I did not find anything. It had been several days. If memory serves me eor-rect, I don’t believe I executed that search warrant till the 12th day of October, if I remember right, so several days had passed since the crime had occurred. You know, he could have cleaned seats, whatever. I just didn’t locate anything.
The decision to object to this testimony and the decision of what 11squestions to ask on cross-examination fall within the ambit of trial strategy. This court affords great deference to trial counsel’s tactical decisions and trial strategy. State v. Grant, supra. Again, there is no showing as to how the trial’s outcome would have been any different.

Leading questions

Defendant complains of his lawyer allowing leading questions, but does not show that but for counsel’s failure to object to leading questions, the outcome of the trial would have been different.
Conclusory statements at trial as to the “rape victim” and the “rape kit ”
In State v. Langendorfer, 389 So.2d 1271 (La.1980), the Supreme Court held that use of the phrase “rape kit” at the defendant’s trial was not prejudicial.

Asking a “why” question, allowing the officer to give a hearsay answer

The defendant criticizes his lawyers for eliciting damaging hearsay testimony from Lt. Webb.[12] Counsel’s decision to cross-examine Lt. Webb about how he developed suspects in his investigation falls within the ambit of trial strategy. *1275 See State v. Skipper, 2011-1346 (La. App.4th Cir.10/10/12), 101 So.3d 537. This court affords great deference to trial counsel’s tactical decisions and trial strategy. State v. Grant, supra. Even if counsel’s questioning of Lt. Webb was deficient, there is no showing that the trial outcome would have differed.

Eliciting empathy for the victim, particularly by lay witnesses

Defendant urges that his lawyer was ineffective by failing to object to testimony regarding BB’s mental capabilities. The decision whether to object to such testimony constitutes trial strategy. This Court affords great deference to trial counsel’s tactical decisions and trial strategy. State v. Grant, supra. Defendant does not show how this alleged failure would have changed the verdict.

No motion for a unanimous verdict and no polling of the jury

No Louisiana law requires a unanimous verdict in a life sentence case. Polling of a jury is not required.[13] We see no prejudice here.
La. C. Cr. P. art. 782 provides that cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of 12 jurors, 10 of whom must concur to render a verdict. La. C. Cr. P. art. 812 provides, in pertinent part, that, “The court shall order the clerk to poll the jury if requested by the state or the defendant. It shall be within the discretion of the court whether such poll shall be conducted orally or in writing[.]” [14]
| ^Failure of counsel and the comt to consider his pro se motion for new trial and motion for post verdict judgment of acquittal
Defendant urges prejudice in that his lawyer would not adopt these two pro se “motions.” In actuality, there were no allegations.[15]

Failure to mitigate sentence

Defendant shows nothing supportive of a downward deviation from the mandatory life sentence. To rebut the presumption that a mandatory sentence is constitutional, a defendant must clearly and convincingly show that he is exceptional, namely that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Parker, 47,952 (La.App.2d Cir.4/10/13), 113 So.3d 471, writ denied, 2013-1051 (La.11/15/13), 125 So.3d 1101.
This sentence for this heinous crime is not constitutionally excessive and certainly does not shock the conscience.
A. It never did make me want to look in another direction from all the other information that I was taking in about this case. There was no reason to go to another suspect.
*1276 DECREE
The defendant’s conviction and sentence are AFFIRMED.

. Skipper observed no tears, abrasions, redness or swelling of BB’s genital or anal areas.

. Dr. Thigpen testified that she observed that BB was "a little slow.”

. The white Cadillac was impounded on October 8, 2009, the day of the defendant’s arrest. Lt. Webb did not find anything of evidentiary value in the Cadillac.

. In the video, BB stated that:
• the defendant took her to the Junction Store in Grambling and gave her money;
• she bought gum, red pop, and Starburst candy;
• he then made her get in the back seat of his Cadillac and take off her shorts and panties;
• he put his "thing” or "dick” in her "front part”;
• he pulled her shirt up and licked her “knots” and her “front part”;
• he put his hand in her "front part”, and told her they were going to make love;
• he asked her to marry him, but she told him that she was not going to marry him;
• she could not stop him, and it hurt;
• when he put his "thing” in her, pee came out of his "thing”;
• he told her to shut up because it was a secret and brought her home;
• while the defendant was outside, she told her mom, dad and aunt what happened; and
• she did not want to say anything around the defendant.

. "Motion for New Trial” and "Motion in Arrest of Judgment.”

. La. R.S. 14:42(D) provides that a person convicted of aggravated rape of a child under 13 shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Here, the trial court failed to order that the defendant’s life sentence be served without the benefit of parole, probation or suspension of sentence. The sentence will be corrected automatically by operation of La. R.S. 15:301.1. See State v. Braziel, 42,668 (La.App.2d Cir. 10/24/07), 968 So.2d 853; State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790.

.It would seem counterproductive, before a jury, for counsel to raise numerous objections, cross-examine law officers about minor issues, or grill a young mentally challenged rape victim whose Dora the Explorer panties contained the defendant’s DNA.

. Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Eiskina, 42,492 (La.App.2d Cir.9/19/07), 965 So.2d 1010; State v. Lane, 40,816 (La.App.2d Cir.4/12/06), 927 So.2d 659, writs denied, 2006-1453 (La.12/15/06), 944 So.2d 1283, and 2006-2502 (La.5/4/07), 956 So.2d 599. However, when the record is sufficient, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. State v. Eiskina, supra; State v. Lane, supra.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. See State v. Wry, 591 So.2d 774 (La.App.2d Cir.12/4/91). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).
To establish that his counsel was ineffective, a defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. See Strickland v. Washington, supra. The assessment of an attorney’s performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Grant, 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823, writ denied, 2007-1193 (La.12/7/07), 969 So.2d 629; State v. Tilmon, 38,003 (La.App.2d Cir.4/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). The fact that a particular strategy is unsuccessful does not establish ineffective assistance. State v. Felde, 422 So.2d 370 (La.1982).
Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. See Strickland v. Washington, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. See Strickland v. Washington, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La. 11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland v. Washington, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, 2002-1570 (La.5/30/03), 845 So.2d 1067.
The filing and pursuit of pretrial motions are squarely within the ambit of the attorney’s trial strategy, and counsel is not required to engage in efforts of futility. State v. Shed, 36,321 (La.App.2d Cir.9/18/02), 828 So.2d 124, writ denied, 2002-3123 (La.12/19/03), 861 So.2d 561; State v. Hollins, 99-278 (La.App.5th Cir.8/31/99), 742 So.2d 671, writ denied, 1999-2853 (La. 1/5/01), 778 So.2d 587.
In State v. Allen, 2003-2418 (La.6/29/05), 913 So.2d 788, cert, denied, 547 U.S. 1132, 126 S.Ct. 2023, 164 L.Ed.2d 787, the Louisiana Supreme Court stated that “the failure to object to a valid error may be the proper subject of a post conviction claim of ineffective assistance of counsel.” Conversely, the failure to object to invalid errors may not be the proper subject of a claim of ineffective assistance of counsel. State v. Grant, supra, State v. Bradford, 2002-1452 (La.App. 1st Cir.4/23/03), 846 So.2d 880, writ denied, 2003-1410 (La. 11/26/03), 860 So.2d 1133.
Counsel is ineffective when he fails to interview known witnesses. State v. Butler, 41,985 *1272 (La.App.2d Cir.6/20/07), 960 So.2d 1208, writ denied, 2007-1678 (La.5/9/08), 980 So.2d 685. However, the election to call or not to call a particular witness is a matter of trial strategy and is not, per se, evidence of ineffective assistance of counsel. Id. Moreover, great deference must be given to counsel's trial strategies and tactics. State v. Pratt, 32-302 (La.App.2d Cir.9/22/99), 748 So.2d 25.

. Under La. C. Cr. P. art. 578, the state has two years from the institution of the prosecution to bring the defendant to trial on a non-capital felony offense. La. C. Cr. P. art. 580 provides that when a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by La. C. Cr. P. art. 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence trial.
A preliminary plea is any pleading or motion filed by the defense which has the effect of delaying trial. State v. Brooks, 2002-0792 (La.2/14/03), 838 So.2d 778; State v. Wright, 45,980 (La.App.2d Cir.1/26/11), 57 So.3d 465, writ denied, 2011-0421 (La.9/2/11), 68 So.3d 520. These pleadings include properly filed motions to quash, motions to suppress, or motions for a continuance, as well as applications for discovery and bills of particular. Id.

. Defendant cannot have it both ways. If he or his lawyers file motions, the time frame will be extended until disposition. If his lawyers don’t file motions, his rights may be prejudiced.

. In felony cases where an indictment has not been issued, a defendant has both a constitutional and a statutory right to a preliminary examination. La. Const. Art. I, § 14; La. C. Cr. P. art. 292. After the defendant has been indicted by a grand jury, the court may rescind its order for a preliminary examination. La. C. Cr. P. art. 292. The primary function of the preliminary examination is to insure that probable cause exists to hold the accused in custody or under bond obligation. State v. Holmes, 388 So.2d 722 (La.1980). Once a valid indictment is returned by a grand jury, the existence of probable cause is conclusively presumed and the preliminary examination is limited to the perpetuation of testimony and the fixing of bail. Id.; La. C. Cr. P. art. 296.

. On cross-examination, defense counsel asked Lt. Webb why he did not try to develop other suspects in his investigation:
Q. And once your case began to develop, your initial suspect, and your only suspect, was Mr. Moore. Correct?
A. That’s correct.
Q. Did you even try to develop any other suspects?
A. I did not because he was named from the start of the investigation.
Q. And why didn’t you try to develop any other suspects?
[[Image here]]
A. There was no need at that time since he was named the suspect. B.B. knew the gentleman. He was a friend of the family. She was absolutely positive who—that’s who was with him. [Mr. Amanuel] identified Moore.
Q. Based on the fact that you had enough experience with her to know that she was mentally challenged, wouldn't that give you pause to maybe want to develop one or two more suspects other than Mr. Moore?

. The death penalty for aggravated rape has been declared unconstitutional. Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008).

. Because the death penalty is no longer a possibility for aggravated rape, the defendant was not entitled to a unanimous verdict. His lawyer was therefore not ineffective in failing to request a unanimous verdict. Further, the jury was properly instructed that 10 of them must agree on the verdict. La. C. Cr. P. art. 812 allows, but does not require, counsel to request that a jury be polled. As there is no indication in the record that the jury’s verdict was not proper, defendant has failed to show that his attorney was ineffective in failing to have the jury polled.

.The record here does not provide enough information for us to properly rule on most of defendant’s allegations. If issues actually exist, they can be more properly reviewed in an application for post-conviction relief, on a full record.