Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,448-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TRAVEION TRAMELL FIELDS                     Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 380,682

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Holli Herrle-Castillo

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

JASON W. WALTMAN
JOHN C. PHILLIPS
Assistant District Attorneys

* * * * *

Before COX, HUNTER, and ELLENDER, JJ.

**COX, J.**

This criminal appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. Defendant, Traveion Tramell Fields ("Fields"), was convicted by a unanimous jury of second degree murder in violation of La. R.S. 14:30.1, and a responsive verdict of aggravated battery in violation of La. R.S. 14:34. Following a jury trial, Fields was sentenced to life imprisonment at hard labor for second degree murder and 10 years at hard labor for aggravated battery; each sentence was to be served consecutively and without benefit of probation, parole, or suspension of sentence.

From his conviction and sentence, Fields now appeals, alleging he was denied effective assistance of counsel when defense counsel failed to call evaluating doctors to testify during the sanity hearing, and waived Fields' presence during the hearing. For the reasons set forth below, we affirm Fields' conviction and sentence.

## FACTS

On April 29, 2021, Fields was charged by bill of indictment with one count of second degree murder of Alan Jefferson ("Jefferson") and one count of attempted second degree murder of Debra Douglas ("Douglas"). A sanity hearing was held on July 2, 2022, wherein stand-in counsel reported that Fields was absent due to illness and waived his presence. After reviewing reports from Dr. Jennifer Russell ("Dr. Russell")[1] and Dr. Joshua Sanderson ("Dr. Sanderson"), who evaluated Fields, the trial court

---

[1] In finding Fields competent to stand trial, the trial court mistakenly stated it reviewed letters *from Dr. Lobrano* and Dr. Sanderson. However, the reports presented during the hearing and included in this record were prepared and signed by Dr. Russell and Dr. Sanderson.

concluded that Fields was competent to stand trial.  On December 5, 2022, trial commenced and the following testimony was adduced:

After identifying Fields in open court, Douglas, Fields' grandmother, testified that throughout various times in his childhood, Fields lived with her in Shreveport, Louisiana.  Douglas explained that Fields was 19 when he last lived with her and that he had been enrolled at Southern University in Shreveport to study forensics.  She stated Fields made good grades while in school and also maintained steady employment.  Douglas stated that Fields left school to pursue a career in music, eventually producing his own music.

Douglas testified that Jefferson, her nephew, also lived with her during this time.  She explained that Fields and Jefferson had a close relationship and that because Jefferson was older, Fields viewed Jefferson as more of an uncle than a cousin.  Douglas testified that Fields had been living in Tennessee with his mother, but came to visit her for about three days.  Douglas stated that on January 17, 2021, she planned to drive Fields back to Tennessee after her online church service.  Douglas stated that Jefferson agreed to ride with her in case something went wrong.

Douglas testified that she drove the car she used for Uber to pick Fields up from her daughter's home in Bossier.  Douglas stated that she usually kept her gun, a Glock 19, nine-millimeter pistol, in the glove compartment of the car for protection during Uber pickups, but on this occasion, moved the gun to the center console.  Douglas explained that Jefferson was in the passenger seat and Fields was in the backseat directly behind Jefferson.  Douglas recalled that everything seemed normal and that she and Jefferson made jokes and discussed the earlier church service.  She

2

noted that while Fields was quiet as they approached Interstate 49, no arguments occurred that would have upset him.

Douglas testified that at some point during the drive, she heard a loud sound that she initially thought came from outside the vehicle. She stated that as she looked around to determine what the noise was, Jefferson slumped over on top of the center console onto her. Douglas stated that she looked back at Fields and "he was just sitting there," but later learned that Fields had shot Jefferson in the back of the head. Douglas recalled that she asked Fields why he would do this, and his only response was "I had to do it. You know, they wanted me to do it, you know." Douglas stated that as she approached Gilliam, Louisiana, she attempted to get off the interstate, but Fields told her not to go back to Shreveport or to Arkansas because he was afraid someone would kill him if he went there.

Douglas stated that at some point Fields gave her the gun he used to shoot Jefferson and she dropped the weapon on the floorboard by her feet. Douglas testified that Fields prevented her from calling 911, told her not to drive back to Shreveport, and tried to convince her to help him dispose of Jefferson's body. Douglas stated that Fields repeated that "they knew I had to do this," but would not clarify who "they" were. Douglas stated that she attempted to drive back to Shreveport, but when Fields realized what she was doing, he demanded the gun back and then began to choke her. Douglas explained that she pulled the car over and drove off when Fields exited the vehicle. Douglas stated that she then called 911 and drove to the nearest hospital. Douglas clarified that her gun remained in the center console during the entire incident and that Jefferson never made any attempt to remove it.

3

Corporal Nathanial Wesson ("Cpl. Wesson"), of the Caddo Parish Sheriff's Office ("CPSO"), then testified that on January 17, 2021, he was dispatched to Grand Oakes apartments in north Shreveport. Cpl. Wesson explained that dispatch reported that a man at the apartment complex reported a shooting. Cpl. Wesson testified that when he arrived, he observed a man running toward his unit trying to get his attention. Cpl. Wesson stated the man, later identified as Fields, informed him that his grandmother shot his uncle. Cpl. Wesson explained that Fields spoke quickly, was hard to understand, and would often delve off into another story.

Cpl. Wesson stated that Fields admitted that the initial report to dispatch was untrue and that instead, his grandmother pointed a gun at him, demanding that Fields shoot his uncle. Cpl. Wesson stated that after hearing the different versions of the incident, he handcuffed Fields for their safety. On cross-examination, Cpl. Wesson admitted that the audio on his bodycam was not functioning properly and that he did not recall seeing blood on Fields when he spoke with him.

Next, Sergeant James Norwood ("Sgt. Norwood") of CPSO testified that he was dispatched to the Grand Oakes apartment complex to assist. Sgt. Norwood stated that when he arrived, he observed Fields in handcuffs with Cpl. Wesson next to him. Sgt. Norwood testified that since Fields called 911, he spoke with him to determine what actually occurred. Fields told Sgt. Norwood that he, his grandmother, and uncle were en route to Tennessee and that during the drive, his grandmother spoke about the Bible. Sgt. Norwood explained that Fields did not make a lot of sense and that he only vaguely understood that his uncle had been shot and that his grandmother pulled over on the side of the road. Sgt. Norwood testified that when

4

Deputy Brock Bonds ("Dep. Bonds") arrived, Fields only wanted to speak with him. Sgt. Norwood stated that at this time, officers learned from dispatch that Fields was actually the shooter involved in this incident.

Dep. Bonds then identified Fields in open court. Dep. Bonds testified that Fields initially claimed that his grandmother forced him to shoot his uncle. Dep. Bond then advised Fields of his Miranda rights and allowed Fields to step aside to speak with him. Dep. Bonds noted that Fields appeared to have full clarity while speaking. Dep. Bonds stated that Fields claimed that his uncle's brother was likely the reason Fields was shot while in Memphis. From this Fields told Dep. Bonds that his uncle "should have known it was coming" and because of this, he shot his uncle in the back of the head.

Next, Sergeant Gabriel Evans ("Sgt. Evans"), an officer for LSU hospital, testified that on the day in question, Douglas approached him and explained that her nephew had been shot and the gun was still in her vehicle. Sgt. Evans testified that two firearms were recovered from the vehicle, with one being located on the floorboard of the driver's side, and the other located in the center console.

Doctor Long Jin ("Dr. Jin"), who performed Jefferson's autopsy, was tendered as an expert in forensic pathology. Dr. Jin testified that he conducted an examination of the body and confirmed that Jefferson died from a gunshot wound located on the back of the head. Dr. Jin explained that in this case, the gun was placed against Jefferson's head as it was fired, with the bullet entering the skull.

Finally, Detective Demetrice Adams-Ellis ("Det. Adams-Ellis") of CPSO testified that he interviewed Fields. Det. Adams-Ellis testified that

Fields initially stated that an unspoken conversation occurred between him and his grandmother. Fields explained that his grandmother wanted him to shoot Jefferson or else she would harm Fields. Det. Adams-Ellis testified that Fields then stated that he knew his grandmother had a gun in the car and that he saw Jefferson opening the glovebox so he shot Jefferson in self-defense.

At the close of testimony, the jury unanimously found Fields guilty as charged of second degree murder for count one and returned a responsive verdict of aggravated battery as to count two. On January 23, 2023, Fields' motions for new trial and post-verdict judgment of acquittal were denied. Thereafter, Fields was sentenced to life imprisonment at hard labor for second degree murder and 10 years at hard labor for aggravated battery; each sentence was to be served consecutively and without benefit of probation, parole, or suspension of sentence. On January 31, 2023, Fields' motion to reconsider sentence was denied. This appeal followed.

**DISCUSSION**

On appeal, Fields asserts that he was denied effective assistance of counsel when stand-in trial counsel (1) failed to call the doctors who examined him to testify at the sanity hearing, and (2) waived Fields' presence at the sanity hearing.

Generally, claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. McGee*, 18-1052 (La. 2/25/19), 264 So. 3d 445. However, when the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. *Id.*; *State v. Frost*, 53,312 (La.

6

App. 2 Cir. 3/4/20), 293 So. 3d 708, *writ denied*, 20-00628 (La. 11/18/20), 304 So. 3d 416.

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the two-prong test to analyze a defendant's claim for ineffective assistance of counsel. First, a defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. *Strickland*, *supra*; *State v. Moore*, 48,769 (La. App. 2 Cir. 2/26/14), 134 So. 3d 1265, *writ denied*, 14-0559 (La. 10/24/14), 151 So. 3d 598.

The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *State v. Hilliard*, 52,652 (La. App. 2 Cir. 8/14/19), 278 So. 3d 1065, *writ denied*, 19-01701 (La. 7/24/20), 299 So. 3d 68; *Moore*, *supra*.

Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Strickland*, *supra*; *Hillard*, *supra*. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of

*8*

the proceedings. Rather, he must show that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *Id.*

Whether to call a witness is within the ambit of trial strategy. *State v. Tyson*, 53,724 (La. App. 2 Cir. 6/23/21), 321 So. 3d 1134, *writ denied*, 21-01086 (La. 1/26/22), 331 So. 3d 901. Additionally, the securing of an expert witness is a strategic and tactical decision made by defendant's trial counsel. *Id.* Therefore, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *State v. Reeves*, 18-270 (La. 10/15/18), 254 So. 3d 665.

Here, Fields asserts that stand-in trial counsel, was ineffective, in part, because he failed to call his evaluating doctors to testify at the sanity hearing. Fields complains that his statements to officers suggest that he suffered from delusional thoughts and directly contradict the findings of Dr. Russell's report; as such, Dr. Russell and Dr. Sanderson should have been present to reconcile this disparity and clarify the contents of their reports. Fields further contends that there was "no indication that [stand-in trial counsel] read the psychiatric reports, nor that he had ever met or spoken to [him]." We disagree.

In this case, Dr. Russell conducted an in-person evaluation of Fields after the offense and rendered a 25-page comprehensive report of that evaluation. In part, Dr. Russell indicated that at no point during her evaluation did Fields exhibit any signs of psychosis as he was "cooperative,

attentive, pleasant, and polite," and "responsive to both verbal and non-verbal social cues." Dr. Russell's report also documented that Fields denied having "auditory or visual hallucinations, beliefs that others are conspiring against, threatening, or attempting to harm him, beliefs that he has special abilities or powers, beliefs that he can read or control the minds or thoughts or others or that others can read or control his mind or thoughts or that he receives messages of personal significance from the television or radio." Importantly, Fields reported that he shot Jefferson in self-defense, and as reflected in Dr. Russell's report, Fields was aware that the statements he reported to responding officers that his grandmother threatened him into shooting Jefferson were false.

After a review of the record and transcript from the sanity hearing, we find that Fields failed to show that either Dr. Russell or Dr. Sanderson was available to testify, that their testimony would have differed from the aforementioned findings, or that their testimony would have been favorable toward Fields in light of the findings of the report. Moreover, there is no indication that stand-in trial counsel was ineffective. Other than Fields' in brief allegation that stand-in trial counsel "barely remember[ed]" to waive Fields' presence during the hearing, Fields has not presented any specific acts or omissions that indicate stand-in counsel was ineffective in representing Fields during the hearing. Accordingly, we find that this argument lacks merit regarding stand-in counsel's performance.

Fields further argues that stand-in counsel was ineffective in waiving his presence during the sanity hearing. However, in brief, Fields admits that while a defendant has a right to be present during the making, hearing of, or ruling on a preliminary motion or application addressed to the court, his

9

presence is not essential or required according to La. C. Cr. P. art. 834(1).

The Louisiana Supreme Court in *State v. Kahey,* 436 So. 2d 475 (La. 1983),

explained:

> Presence of the defendant is a condition of due process to the
> extent that a fair and just hearing would be thwarted by his
> absence, and to that extent only. Therefore, the presence of the
> defendant is only essential at proceedings which have a
> reasonably substantial relation to the fullness of the opportunity
> of the defendant to defend against the charge. *Snyder v.
> Commonwealth of Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78
> L.Ed. 674 (1934). From this principle has emerged the general
> rule that no claim of error, or at least no claim of prejudicial
> error, can be based upon the exclusion of absence of a
> defendant, pending his trial on a criminal charge, from the
> courtroom, or from a conference between court and attorneys,
> during argument on or discussion of a *question of law.*

This right may be waived by either the defendant himself, or his attorney, by

his voluntarily absence or his failure to object to argument or discussion

during his absence. *Kahey*, *supra*.

Here, the record reflects that, at least in part, Fields was not present

during the hearing "due to illness." Further, no objection was later entered

by either Fields or his attorney as to Fields' absence from the hearing, nor is

there any indication that Fields was prohibited from attending the hearing.

Additionally, there is no indication throughout the record that reflects that

Fields was prejudiced by the waiver. Accordingly, we find that this

assignment of error is meritless.

*Error Patent*

Our error patent review of the record reveals that the trial court's

order requiring Fields to serve 10 years at hard labor without benefits is

impermissible for aggravated battery. The penalty range for aggravated

battery is set forth in La. R.S. 14:34(B):

> Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both. At least one year of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence if the offender knew or should have known that the victim is an active member of the United States Armed Forces or is a disabled veteran and the aggravated battery was committed because of that status.

Here, there is no evidence that the victim was an active member of the military, a veteran, or that the aggravated battery was committed because of this status. Although neither party raises the issue, we find that the portion of Fields' sentence of 10 years at hard labor without benefits was improper. Pursuant to La. C. Cr. P. art. 882(A), an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.

Accordingly, we amend Fields' sentence for aggravated battery to correct the improper restriction of benefits. Additionally, the trial court is instructed to make an entry in the minutes reflecting this change in sentence.

## CONCLUSION

For the foregoing reasons, Fields' conviction and sentence is affirmed as to count one regarding second degree murder. Fields' conviction regarding count two for aggravated battery is affirmed; however, the sentence is amended to remove the restriction of benefits.

**AFFIRMED IN PART; AMENDED IN PART; AND AS AMENDED, AFFIRMED.**