WILLIAMS, J.
_JjThe defendant, Gary Anthony Bailey, Jr., was charged by bill of information with simple burglary, in violation of LSA-R.S. 14:62. He was found guilty as charged and was sentenced to serve 10 years in prison at hard labor with credit for time served. Subsequently, the defendant was adjudicated a fourth-felony offender and was sentenced to serve life in prison without the benefit of parole, probation or suspension of sentence.
For the following reasons, we hereby vacate the 10-year sentence imposed in the underlying conviction. We remand this matter to the trial court with instruc *1059 tions to amend the minutes to correctly reflect that, pursuant to LSA-R.S. 15:529.1(D)(3), the defendant’s 10-year sentence is vacated. As amended, we affirm.
FACTS
On May 22, 2012, a jury found the defendant guilty as charged of simple burglary. Subsequently, the defendant was sentenced to 10 years at hard labor. This Court affirmed the defendant’s conviction and sentence. State v. Bailey, 48,042 (La.App.2d Cir.5/15/13), 115 So.3d 739, writ denied, 2013-1385 (La.12/6/13), 129 So.3d 530.
On June 18, 2013, while the defendant’s writ application was pending in the supreme court, the state filed a habitual offender bill of information, alleging that the defendant had five prior felony convictions: (1) attempted unauthorized entry of a business on August 8, 1990, Docket No. 68,593 in the 26th Judicial District Court; (2) simple burglary of an inhabited dwelling on May 12, 1994, Docket No. 77,692 in the 39th Judicial |2Pistrict Court; (3) simple escape on August 10, 1995, Docket No. 79,888 in the 39th Judicial District Court; and (4)-(5) two counts of molestation of a juvenile on November 15, 2007, Docket No. 37,604 in the Second Judicial District Court.
On July 2, 2013, the defendant was arraigned as a fifth-felony offender and entered a plea of not guilty. On July 10, 2013, the defendant filed a pro se objection to the habitual offender bill of information, asserting the following arguments: (1) he did not qualify as a habitual offender because the prior offenses were not the “same or like” offenses; (2) he had not committed the “same or like” offenses within a 10-year period; (3) the habitual offender bill was “defective and meritless”; and (4) the state had not provided him with the bill of information or responses to discovery prior to the deadline for filing his objections.
On July 11, 2013, the defendant filed a request for discovery of items, including “medical examinations or psychological evaluations of the defendant.” The trial court granted the defendant’s request for discovery, and the state provided the defendant with a copy of the following documents:
Docket No. 77692 — Red River Parish— 39th Judicial District Court, Bill of Information No. 77692 — Simple Burglary Inhabited Dwelling, Transcript of Colloquy of Guilty Plea — May 12,1994
Docket No. 79888 — Red River Parish-39th Judicial District Court, Bill of Information No. 79888 — Simple Escape, Transcript of Colloquy of Guilty Plea-August 10,1995
Docket No. 37604 — Bienville Parish— 2nd Judicial District Court, Indictment-37604 — Molestation of a Juvenile (2 Counts), Indictment 37604 — Sexual Battery, Minutes of Court — 37604, Fingerprints of Gary A. [sBailey
Docket No. 189924 — Bossier Parish— 26th Judicial District Court, Bill of Information No. 189924 — Simple Burglary, Minutes of Court — 189924, Transcript of Sentencing — August 14, 2012
Thereafter, the defendant, through counsel, filed a motion to quash three of the convictions enumerated on the habitual offender bill, arguing that the state had not provided a means to identify the defendant as the same person who pled guilty to the prior offenses.[1] After defense counsel *1060 filed the motion to quash, the defendant terminated her services. At an appearance before the trial court on August 6, 2013, the defendant informed the court that he had terminated counsel’s services and had chosen to represent himself. The trial court advised the defendant of his right to be represented by an attorney. In open court, defense counsel provided the defendant with a copy of the motion to quash that had been filed on his behalf.
On August 14, 2013, the defendant filed a pleading entitled “Motion to Dismiss and Accept.” In that document, the defendant requested that the motion to quash, filed by his prior counsel, be withdrawn. He argued that counsel had been “fired” for “intentional deception and betrayal” and that he disagreed with her decision to seek to quash only a portion of the habitual offender bill. Again, the defendant asserted that he was not eligible for an enhanced sentence.
| ¿Thereafter, the defendant filed a myriad of motions, including a motion for a preliminary examination, change of venue and responses to discovery. The court denied the motion for a preliminary examination, finding that the defendant was not entitled to a preliminary exam in a habitual offender proceeding. The court also denied the motion for change of venue, finding that a motion for change of venue was a pre-trial motion, and was not appropriately filed following a conviction. Further, the court denied the defendant’s requests for discovery, in which he had requésted the victims’ contact information, psychiatric reports, medical records, criminal records, police reports and transcripts of all proceedings. The defendant did not assert an argument with regard to the motion to quash, alleging that he was unable to do so because he had not been provided with proper responses to requests for discovery. He also argued that he was not eligible for an enhanced sentence because “[the offense] has to be a same or like offense within those ten years.”
The habitual offender hearing was held on October 29, 2013. Again, the trial court advised the defendant of his right to counsel; however, the defendant expressly waived that right and chose to continue representing himself.
On morning of trial, the defendant requested a continuance, stating that he had not received all necessary responses to his requests for discovery. The state advised that all discovery documents had been forwarded to the public defender’s office. Defendant’s prior counsel was called to testify regarding the motion for continuance. She testified that she|fihad provided the defendant with the entire public defender’s office file on October 1, 2013. The trial court denied the motion to continue and the trial commenced.
Detective Jonathan Jackson, of the Bossier Parish Sheriffs Office, was called to testify as an expert in the field of fingerprint identification and comparison. The defendant stated that he did not have any objections to Detective Jackson’s qualification as an expert in that field. Thereafter, Detective Jackson obtained the defendant’s fingerprints in open court and compared them to the fingerprints contained in the defendant’s records of prior convictions. Before Detective Jackson could respond to questions regarding comparison of the fingerprints, the defendant stated:
I’m not contesting probably any of the convictions. I’m contesting the charges *1061 themselves in accordance with R.S. 15:529.1. It has to be a same [or] like offense and it has to be within ten years.
The trial court instructed the district attorney to proceed with questioning Detective Jackson. The detective testified that the fingerprints obtained from the defendant in open court were the same as those in the 2012 conviction for simple burglary. The fingerprint card from the 2012 conviction was introduced into evidence. Also introduced into evidence was the record of the 1989 conviction for attempted unauthorized entry of a business, the record and fingerprints of the defendant’s 1994 conviction for burglary of an inhabited dwelling, and the record of the defendant’s 2004 conviction of molestation of a juvenile. The defendant specifically stated that he did not have any objections to the fingerprint cards and records pertaining to the prior convictions being placed into evidence.
|fiThe trial continued and the defendant did not present any evidence. Rather, he relied on his legal argument, which was based on his own interpretation of LSA-R.S. 15:529.1. The defendant argued that the statute provided that the time spent in jail is not included in the computation of the ten-year period between the expiration of a sentence and the next succeeding offense under LSA-R.S. 15:529.1(C). The district court noted the defendant’s objection misinterpreting the statute and stated:
[The statute] talks about the calculation of probation while you’re incarcerated— and not the fact that you were incarcerated. So, the fact that and — and the conclusion of your sentence doesn’t simply conclude upon your release from jail. If you had additional parole time or anything, all of that time is calculated and that — that period of ten years— there was no one period of ten years where you went without some, being on some type of sentencing be it either-probation or parole or incarceration.
The trial court adjudicated the defendant as a fourth-felony habitual offender based upon the convictions for simple burglary, attempted unauthorized entry of a business, simple burglary of an inhabited dwelling, and molestation of a juvenile. Thereafter, the defendant waived the sentencing delays and was sentenced to life imprisonment at hard labor, without the benefit of parole, probation or suspension of sentence. He did not file a motion to reconsider sentence.
The defendant appeals.
DISCUSSION
The defendant contends the sentence imposed is constitutionally excessive. He argues that a sentence of life imprisonment, without the benefit of parole, probation, or suspension of sentence, for a conviction of 17simple burglary, is grossly disproportionate to the severity of the offense. The defendant asserts that a trial court may reduce a habitual offender punishment if the sentence makes no measurable contribution to the acceptable goals of punishment. State v. Dorthey, 628 So.2d 1276 (La.1993).
As stated above, the defendant did not file a motion to reconsider sentence. When a defendant fails to timely file a motion to reconsider sentence under LSA-C.Cr.P. art. 881.1, the appellate court’s review is limited to a bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Boyd, 46,321 (La.App.2d Cir.9/21/11), 72 So.3d 952.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the *1062 sense of justice and serves no purpose other than to inflict needless pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Fatheree, 46,686 (La.App.2d Cir.11/2/11), 77 So.3d 1047. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166. In the instant case, the defendant was adjudicated a fourth-felony habitual offender. LSA-R.S. 15:529.1(A)(4) provides for the sentencing of an offender adjudicated as a fourth-felony offender as follows:
If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by Isimprisonment for any term less than his natural life then:
[[Image here]]
(b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Two of the defendant’s felony convictions — simple burglary of an inhabited dwelling and simple burglary — were each punishable by imprisonment for 12 years.[2] One of the other felony convictions, molestation of a juvenile, is a sex offense as defined in LSA-R.S. 15:540 et seq; the victims were “under the age of eighteen at the time of commission of the offense.” Therefore, this defendant’s fourth felony and two of his prior offenses were a combination of crimes specifically delineated in LSA-R.S. 15:529.1(A)(4).
Additionally, during the sentencing hearing for the underlying offense, the trial court reviewed the presentence investigation report, which |8revealed a myriad of arrests and nol prossed charges. The court also noted the trial testimony of the defendant regarding his personal background, familial background and extensive criminal history, which began as soon as the defendant dropped out of high school.[3]
We have reviewed this record, as well as the record in the underlying matter. We find that the defendant’s sentence is not *1063 constitutionally excessive. Considering the defendant’s extensive criminal history (particularly his propensity to commit crimes similar to the instant offense), the sentence imposed by the trial court does not shock the sense of justice, nor is it disproportionate to the severity of the offense. Further, based upon the defendant’s criminal history and adjudication as a fourth-felony offender, we find that the imposition of the statutorily mandated life sentence makes a measurable contribution to the acceptable goals of punishment. While the imposition of a life sentence may, in some cases, be disproportionate to a conviction for simple burglary, the record reveals that this defendant is within the class of offenders for which the legislature intended to enhance punishment by enacting the habitual offender law. Accordingly, these assignments are without merit.
| inPro Se Assignments of Error
The defendant contends he was not informed of his right to remain silent and his right against self-incrimination during the habitual offender proceedings. He argues that he admitted to the prior convictions at the hearing without being informed of his right not to do so.
In State v. Harris, 95-0900 (La.5/19/95), 654 So.2d 680, following an adjudication as a multiple offender, the defendant applied for post-conviction relief, arguing that the trial court failed to advise him of his rights before he stipulated to his identity. The Louisiana supreme court stated:
Admissions of identity at a multiple offender hearing implicate a defendant’s Fifth Amendment privilege against self-incrimination. Nevertheless, multiple offender proceedings ‘simply should not be equated (at least for purposes of determining the validity of an admission) to trials of guilt or innocence.’ This Court has therefore declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the Boykin colloquy which must accompany a valid plea of guilty. In the absence of any allegation or showing that the admission was involuntary, the availability of post-conviction relief turns on whether the proceedings as a whole accorded the petitioner fundamental fairness and due process of law.
[[Image here]]
A complete review of the transcript reveals that the petitioner was given a fundamentally fair hearing wherein the state proved the prior felony convictions.
Id. (Internal citations omitted).
In the instant case, it is undisputed that the trial court did not advise the defendant of his right to remain silent during the habitual offender proceeding. After the defendant stated that he was not contesting any of his | n prior convictions, the state introduced into the record evidence that established that the defendant was the person who had been convicted of the prior offenses. Consequently, the state did not rely solely upon the defendant’s admission of identity as proof of his habitual offender status. We find that the record herein clearly reflects that the defendant was given a fundamentally fair hearing, during which the state proved the prior felony convictions. Thus, these assignments lack merit.
The defendant also contends various procedural defects in the habitual offender proceedings constitute grounds for vacating his adjudication as a multiple offender. Specifically, he asserts the following arguments: the state knew of his prior felony convictions prior to the trial on the underlying offense, but did not charge him as a habitual offender until after he had been convicted and sentenced; and his prior convictions were not the “same or similar” *1064 to the underlying offense; therefore, he was not eligible for an enhanced sentence.[4]
LSA-R.S. 15:529.1(D)(1) provides as follows:
If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, • which, if committed in this state would be a felony, the district attorney of the parish in which the subsequent conviction was had may file an information accusing the person of a previous 112conviction.
In State v. Muhammad, 2003-2991 (La.5/25/04), 875 So.2d 45, the defendant was adjudicated a fourth-felony offender; however, the court of appeal set aside the adjudication and remanded the matter for further proceedings. Thereafter, the state refiled a multiple, offender bill of information charging the defendant as a fourth-felony offender. In the meantime, the defendant had served his prison sentence and had been released from custody. Following another hearing, the defendant was, again, adjudicated a fourth-felony offender and was sentenced to life in prison. The defendant appealed, arguing that he could not -be charged as a multiple offender because he had completed his prison sentence on the underlying charge. The court of appeal determined that the habitual offender proceedings must be instituted before the sentence for the underlying felony is completed. The supreme court granted the state’s writ application to consider whether any particular prescriptive period applied to LSA-R.S. 15:529.1. The court stated:
Review of the statute reveals the absence of a prescriptive time period for completion of the habitual offender proceeding. Wording of the statute indicates the legislature contemplated the multiple offender proceeding couíd be brought against an individual who was not incarcerated.
[[Image here]]
[W]e find an evaluation of the circumstances surrounding the multiple offender proceedings should be conducted on a case by case basis. In the process, the court can assure that [the] defendant’s due process rights are protected. Any inordinate delays or bad faith on the part of the State to prejudice the defendant in any fashion would be subject to the scrutiny of the court.
Although the statute does not prescribe a time within 113which the bill must be filed, this court has made a determination that the district attorney must file the habitual offender bill ‘within a reasonable time.’ Relying on the language of the statute regarding the filing, as opposed to the completion of a habitual offender proceeding, this court previously held that the statute ‘does not allow an indefinite time in which the district attorney may file the multiple offender bill once the necessary information is available.’
[[Image here]]
*1065 An important factor to consider in determining whether the bill was filed timely requires a determination of when the district attorney acquired the knowledge that defendant is a multiple offender. The determination of whether the hearing is held within a reasonable time hinges on the facts and circumstances of the specific case.
State v. Muhammad, 875 So.2d at 52, 54 (internal citations omitted).
In the instant case, the defendant was convicted of the charge of simple burglary on May 22, 2012, and he was sentenced on August 14, 2012. During the sentencing hearing, the trial court informed the defendant, “Your criminal record classifies you as a sixth felony offender.” The defendant filed an immediate appeal; his sentence and conviction were affirmed by this Court on May 15, 2013. However, the conviction/sentence was not final because, by that time, the defendant had filed a writ application with the supreme court. While the writ application was pending, on June 18, 2013, the state filed the habitual offender bill of information.
We find that, under the facts of this case, the state did not act unreasonably in deciding to wait to file the habitual offender bill after this court affirmed the defendant’s underlying conviction and sentence. The defendant was aware that he had multiple felony convictions, and he had been informed by the trial court that he was a sixth-felony offender. As Instated above, this court affirmed the defendant’s conviction and sentence on May 15, 2013, and the state filed the multiple offender bill of information approximately one month later. We do not find that the delay in filing the bill constituted an “inordinate delay” and there was no indication that the state acted in bad faith.
Moreover, the defendant’s assertion that the prior felony convictions be the “same or similar” offenses as the current offense is based upon a Black’s Law Dictionary definition of “habitual offender.” However, Louisiana’s habitual offender statute does not require that the prior felony convictions be the “same or similar” offenses as the current offense. Pursuant to LSA-R.S. 15:529.1, the defendant must have been convicted of a felony “under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony.”
Herein, the defendant’s prior crimes of conviction were felonies under the laws of the State of Louisiana; therefore, they were eligible for inclusion as predicate felonies under the habitual offender statute. Accordingly, we find that the defendant was eligible for an enhanced sentence under LSA-R.S. 15:529.1. These assignments are without merit.
Further, the defendant contends more than 10 years had elapsed between the commission of the current crime of conviction and the prior felonies. According to the defendant, the time that elapsed during his frequent jail terms and periods of parole and/or probation should not be calculated against him.
hsLSA-R.S. 15:529.1(C) provides that the habitual offender statute is inapplicable in cases where more than 10 years have elapsed since the expiration of a defendant’s maximum sentence for a prior conviction and the commission of the defendant’s last felony. This is known as the “cleansing period” and it begins to run from the date a defendant is actually discharged from state custody and supervision. State v. Anderson, 349 So.2d 311 *1066 (La.1977); State v. Harris, 44,402 (La.App.2d Cir.6/24/09), 20 So.3d 1121.
In the instant case, the record reveals that the defendant entered a plea of guilty to two counts of molestation of a juvenile on November 15, 2007, and was sentenced to serve two concurrent five year sentences at hard labor. He was subsequently discharged from state supervision for that ..offense and committed the instant crime of conviction, simple burglary, on September 23, 2011. Less than four years elapsed between the prior conviction, and subsequent release from custody, and the current conviction. Additionally, the record reveals the 2007 conviction of molestation of a juvenile was within ten years of the date of discharge from state supervision for the prior offense, simple burglary of an inhabited dwelling, of which the defendant was convicted on May 12, 1994. Similarly, the 1994 conviction was within ten years of the date of discharge from state supervision for the first offense, which occurred at some time after the guilty plea on August 8,1990.
It is clear from this record that there was not a single period of more than ten years that existed between the expiration of the defendant’s prior sentences and the subsequent offense, which could prevent one of the predicate felonies from being used to enhance the sentence. During the |^hearing the trial court stated:
[T]he conclusion of your sentence doesn’t simply conclude upon your release from jail. If you had additional parole time or anything, all of that time is calculated and that — that period of ten years — there was no one period of ten years where you went without some, being on some type of sentencing either be it probation or parole or incarceration.
We agree. Our review of this defendant’s criminal record reveals that he has never had a period of ten years during which he was not either incarcerated or on probation or parole. This assignment lacks merit.
Next, the defendant urges the following complaints with regard to his prior convictions: (1) he was denied the information and documents that were necessary to challenge his prior convictions (according to the defendant, his court-appointed attorney committed perjury when she testified that she had provided all materials to him on October 1, 2013); (2) the state failed to prove a waiver of rights, the presence of counsel, or proper Boykinization in the prior convictions; and (3) the state’s exhibits were not produced with the record he received; therefore, he was unable to review the evidence in preparation for this appeal.
Our review of the record reveals that the defendant’s assertions are without merit. The record shows that the defendant was made aware of the predicate offenses to be used on numerous occasions. The habitual offender bill of information was read, in the defendant’s presence, in open court on July 2, 2013; the defendant asserted that he understood the charges against him. Thereafter, on July 26, 2013, the state provided the defendant with a list of all evidence to be introduced at the hearing. In response, the | ^defendant’s court-appointed counsel filed a motion to quash the habitual offender bill; the defendant was provided with a copy of counsel’s motion to quash on August 6, 2013. Additionally, as stated above, although the defendant admitted to the prior convictions, the state also produced evidence to prove the prior convictions. The defendant did not object to the state’s exhibits. A complete review of the evidence presented at the hearing reveals that transcripts were admitted into evidence reflecting representation of counsel and waiver of all rights at *1067 each of the prior guilty pleas. Further, the defendant was advised that each of the prior convictions could be used in the future to enhance the sentence for a subsequent felony.
With regard to the defendant’s argument that he was unable to review the state’s evidence in preparation for this appeal, it is the general policy of this Court to provide incarcerated defendants with a copy of the record for review; however, exhibits are withheld. Nevertheless, even if the defendant had been provided with the exhibits on appeal, a review of those exhibits does not reveal any meritorious claims. Additionally, the transcripts do not reveal any constitutional issues with any of the prior convictions which could have been presented at the habitual offender hearing. The record shows a waiver of rights, the presence of counsel, and proper Boykini-zation in each of the prior guilty pleas used as convictions in this matter. The trial court properly adjudicated the defendant as a fourth-felony offender. These assignments are without merit.
In other pro se assignments of error, the defendant objects to the proceedings as a whole. Specifically, he contends he was not provided with 118any discovery responses until after the deadline for filing his written objections; he was unable to properly prepare for the hearing because he did not know which prior convictions would be used against him; he was denied his right to call favorable witnesses because the trial court refused to issue subpoenas on his behalf; he was not allowed to procure the testimony of psychiatrists to prove his mental state; he was not provided with a copy of the transcript of the October 1, 2013 hearing; and he never received any materials from his previous counsel.
Discovery is governed by LSA-C.Cr.P. art. 716 et seq. Nondisclosure does not warrant automatic reversal of a conviction; however, where the defendant is lulled into misapprehension of the strength of the state’s case as a result of nondisclosure, the defendant is entitled to reversal. State v. Wilson, 27,889 (La.App.2d Cir.4/8/96), 672 So.2d 448, citing State v. Strickland, 398 So.2d 1062 (La.1981).. The defendant must show prejudice in order for his conviction to be reversed. State v. Stewart, 45,333 (La.App.2d Cir.8/11/10), 46 So.3d 714.
In this case, the defendant has not presented any evidence or argument that he was unaware of the strength of the state’s case against him. At arraignment, the defendant was advised of all prior convictions which the state intended to present as predicate offenses at the habitual offender hearing. On July 26, 2013, the state produced a listing of all evidence to be introduced at the multiple offender hearing. The defendant’s prior court-appointed counsel testified that she had provided to the defendant all materials in the possession of the public defender’s office. The trial court 119found that defense counsel was credible and chose to believe her accounting. The defendant has not presented any evidence to support his allegations of perjury on the part of his prior attorney, and the record does not reveal any indication that the defendant did not receive all discovery materials produced by the state.
Moreover, the defendant has not offered any evidence to support his allegations that he could have successfully challenged any of the prior convictions at the habitual offender hearing, even if the documents were produced. As stated above, a review of the evidence admitted at the habitual offender hearing does not reveal any constitutional claims related to any of the prior convictions. Although the defendant did request to call witnesses, such as psy *1068 chiatrists, the trial court determined that the information sought would be irrelevant in the habitual offender proceeding. There is no evidence that the court abused its discretion by refusing to subpoena witnesses. These assignments are without merit.
Additionally, the defendant has urged’ two assignments of error regarding claims of prosecutorial misconduct. However, his entire pro se brief contains allegations against the state and the district attorney. According to the defendant, the habitual offender proceedings against him were brought because of the district attorney’s “malice and ill will.” He further alleges that the district attorney intentionally used false information in the bill of information, and was aware that the charges contained in the bill did not conform with the requirements of LSA-R.S. 15:529.1.
This defendant has not presented any evidence to support his claim of | gnprosecutorial misconduct. In fact, each of the prior convictions enumerated in the habitual offender bill of information is a felony under the laws of this state and the ten year cleansing period was not met between any of the prior convictions. The evidence shows that the information contained in the bill of information was correct, the expert witness testified that the felonies were committed by the same person, and the defendant admitted in open court that he was the same person who committed the offenses. Therefore, the defendant’s arguments that the district attorney acted with ill will and malice, and that he intentionally included false information in the bill of information is not supported by the record. Therefore, the argument lacks merit.
The defendant also argues that the trial court improperly denied his motion for change of venue. He argues that a conflict of interest exists in the 26th Judicial District Court, due to a federal lawsuit he had filed against Judge Craig, Pamela Smart, Cynthia Johnston, Mark William Rodgers, Schuyler Marvin, Randy Smith, and Judge Jeff Cox. As examples of the prejudice he has suffered, the defendant alleges that Judge Craig stated that he was guilty prior to hearing the evidence, that a correct copy of the transcript dated October 1, 2013 was never provided, that Sarah Giddens (his prior court-appointed attorney) committed perjury, and that transcripts were withheld from him. According to the defendant, Judge Craig should have recused himself due to the prior lawsuit filed against him. The defendant also maintains that he was denied his right to a fair hearing and his constitutional right to due process.
| ¾1 LSA-C.Cr.P. art. 622 provides that a “change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.” LSA-C.Cr.P. art. 671 provides the grounds upon which a trial judge in a criminal case must be recused, one of which is if the judge is “biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial.” A party must file a written motion to recuse prior to commencement of the trial. “If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge.” LSA-C.Cr.P. art. 674.
The defendant’s motion for change of venue was based upon an argument of prejudice arising from his federal civil suit against the presiding judge and *1069 court staff.[5] The argument is more properly a motion for recusal. As noted by the trial court, a motion for change of venue is a pre-trial motion, and is not appropriate following a conviction.
The defendant’s arguments consist mainly of unsupported, conclusory allegations of bias on the part of the trial judge. The record shows that the defendant did not object when the trial judge presided over sentencing on August 14, 2012, nor did he complain about the judge’s failure to self-recuse on his first appeal in this court. Moreover, the civil lawsuit was ^dismissed as frivolous and without merit on October 22, 2012, approximately one year before the habitual offender hearing. The defendant has not presented any evidence of judicial misconduct on the part of the trial judge, nor has he shown any valid grounds upon which the judge was required to self-recuse or refer the motion to recuse. Again, the record reflects that the defendant received a fundamentally fair and impartial hearing. These assignments lack merit.
The defendant further contends the assistance of both trial counsel, Sarah Guldens, and appellate counsel, Douglas Lee Harville, was ineffective. He argues that his trial counsel was ineffective because she was not present at his arraignment, did not deliver the necessary documents to him, did not contest the entire bill of information, and she committed perjury. The defendant maintains that his trial counsel “did not care about truth, honesty, or justice” and she “was obviously working for the District] Attorney’s office, not me!” The defendant argues that appellate counsel was ineffective in the following regards: (1) appellate counsel refused to assist him in requesting documents from the district court; (2) appellate counsel did not ensure all transcripts were included in the record; (3) appellate counsel believed that the defendant was eligible for an enhanced sentence; and (4) appellate counsel briefed and argued only one issue on appeal. According to the defendant, due to the ineffective assistance of both trial and appellate counsels, he was forced to represent himself; therefore, he was denied his right to counsel.
As a general rule, a claim of ineffective assistance of counsel is more Improperly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139, writ denied, 2007-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
*1070 To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A previewing court must give great deference to trial counsel’s judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Grant, 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823, unit denied, 2007-1193 (La.12/7/07), 969 So.2d 629; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).
Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, ie., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, unit denied, 95-1398 (La.11/3/95), 662 So.2d 9. The failure of counsel to make meritless objections or file futile motions is not ineffective assistance. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir.2002).
Our review of this record reveals that the defendant’s court-appointed attorney was not present at his arraignment. However, another attorney from the public defender’s office “stood in” for counsel and entered a plea of “not guilty” on behalf of the defendant. Therefore, the defendant was clearly represented by counsel at his arraignment and was not prejudiced by his appointed-counsel’s absence. Also, the trial court made a factual finding pthat trial counsel had delivered to the defendant all documents; the defendant has not shown that the court’s factual determination was in error. Further, trial counsel filed an appropriate motion to quash three of the predicate offenses identified in the habitual offender bill. The mere fact that trial counsel strategically opted not to file a motion to quash the entire bill does not constitute ineffective assistance. As previously discussed, the habitual offender bill of information was not defective and the defendant was unsuccessful in his own attempt to quash the bill of information.
With regard to the defendant’s claims concerning appellate counsel, we find that it was not the duty of an appellate counsel to assist the defendant with motions before the trial court. Additionally, appellate counsel filed an appellate brief, on behalf of the defendant, which asserted the one assignment of error which, counsel believed, had merit. Counsel’s failure to assert multiple meritless assignments of error did not constitute ineffective assistance of counsel. Further, the defendant has not shown any evidence that he was prejudiced as a result of these alleged deficiencies. The defendant filed a pro se brief, in which he asserted 21 additional assignments of error, which have been reviewed by this court. • For the fore *1071 going reasons, these assignments are without merit.
ERRORS PATENT
Pursuant to LSA-C.Cr.P. art. 920, we have examined this record for errors patent. We find that the trial court failed to vacate the prior sentence, in accordance with LSA-R.S. 15:529.1(D)(8), and failed to advise the defendant of the delays for filing for post-conviction relief, pursuant to JggLSA-C.Cr.P. art. 930.8.
When the court adjudicates a defendant as a habitual felony offender, “the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated.” LSA-R.S. 15:529.1(D)(3). Where it is obvious that the trial court intended to increase the substantive sentence, and correction of the illegal sentence does not involve the exercise of sentencing discretion, the appellate court may amend to correct, without remanding for resentenc-ing. State v. George, 39,959 (La.App.2d Cir.10/26/05), 914 So.2d 588.
In this case, it is clear that the trial court intended to increase the substantive sentence from ten years’ imprisonment to life imprisonment, in accordance with the habitual offender statute. Therefore, we hereby vacate the original 10-year sentence imposed in Docket No. 189924, 26th Judicial District Court, Parish of Bossier, to conform to the requirements set forth in LSA-15:529.1(D)(3), and we amend the defendant’s sentence to reflect the vacation of the defendant’s original 10-year sentence.
Additionally, at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing. LSA-C. ,Cr. P. art. 930.8(C). The record reflects that, at the October 29, 2013 habitual offender hearing, the district court failed to properly advise defendant of the prescriptive period within which he must apply for post-conviction relief. Accordingly, we hereby advise the defendant, pursuant to LSA-C.Cr. P. art. 930.8, that no application for 127post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922. See State v. Ramsey, 2010-333 (La.App. 5th Cir.1/25/11), 60 So.3d 36.
CONCLUSION
The defendant’s adjudication as a fourth-felony offender and sentence are affirmed. We hereby vacate the 10-year sentence imposed in the underlying conviction, and we remand this matter to the trial court with instructions to amend the minutes of sentencing to correctly reflect that the defendant’s original 10-year sentence is hereby vacated.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.

. The defendant argued that the state had not shown that he was the same person who had pled guilty to the following offenses: attempted unauthorized entry of a business on August *1060 8, 1990; simple burglary of a inhabited dwelling on May 12, 1994; and, simple escape on August 10, 1995.

. LSA-R.S. 14:62(B) provides:
Whoever commits the crime of simple burglary shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both.
LSA-R.S. 14:62.2(B) provides:
Whoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years.

. In 1986, the defendant pled guilty to simple burglary; his probation was revoked one year later. In 1987, he pled guilty to felony property damage. In 1989, the defendant pled guilty to attempted burglary of a business in Bossier, and in 1993, he pled guilty to simple burglary of an inhabited dwelling in Red River Parish (both of these convictions were used as predicate felonies in this habitual offender proceeding). Further, the defendant was convicted of DWI in 2002, and in 2004, he pled guilty to two counts of molestation of a juvenile (also used as a predicate felony in this habitual offender proceeding). At the time of sentencing on the underlying offense, the defendant had a pending charge for failure to register as a sex offender.

. The defendant also argues that the bill of information was. defective because it included his conviction of two counts of molestation of a juvenile. According to the defendant, that conviction should have been counted as a single conviction. The defendant correctly noted that the habitual offender bill of information contained a single conviction on two counts of molestation of a juvenile. However, the trial court used that conviction as only one predicate felony conviction. The court expressly noted that the "molestations ... are counted as a single offense[J”

. The defendant was convicted of simple burglary on May 22, 2012. Approximately one month later, on June 25, 2012, he filed a civil action in the U.S. District Court, Western District of Louisiana, naming Judge Craig and various employees of the 26th Judicial District Court as defendants.