GARRETT, J.
hThe defendant, Christopher M. Bell, was charged with aggravated burglary and possession of a firearm by a convicted felon. Following a jury trial, he was convicted of the responsive verdict of attempted aggravated burglary and as charged on the firearm offense. He was adjudicated a second felony offender and sentenced as such on the attempted aggravated burglary charge to 15 years at hard labor without benefit of probation or suspension of sentence. On the firearm offense, he was sentenced to ten years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court ordered that the sentences be served concurrently with credit for time served. The defendant appeals. For the reasons stated below, we affirm the defendant’s convictions and sentences.
FACTS
On the night of July 7, 2015, Benny and Rebecca York were sleeping in recliners in the den of their home on Lowry Road in rural Caddo Parish. Mrs. York was awakened by a sound she assumed was caused by her cat. When she called the cat’s name, she heard the sound of a person’s voice. Realizing there was an intruder in their home, she immediately woke up her husband. Mr. York saw a large man leaving through the front door. He grabbed a high intensity flashlight and his unloaded shotgun, and placed three shotgun shells in his pocket. Athough he and his wife initially went out the back door of the residence together, he sent her back inside to call 911.[1]
ls>As Mr. York went around the corner of the home, he observed car lights in his neighbor’s yard. He then came across a man crouched behind a pine tree in his yard. The man was wearing a hoodie and holding a roll of duct tape. The man told Mr. York to not “mess” with him and to go back in his house. Mr. York responded by instructing the man to put his head in the grass until the sheriff arrived. At trial, Mr. York identified this man as the defendant.
At this point, a “huge”[2] man came up behind Mr. York and hit him in the back. This man put a gun against Mr. York’s neck and demanded his shotgun, while threatening to shoot him in the head. After taking Mr. York’s shotgun, the two men fled over a fence toward a dark-colored automobile with an open trunk, which was parked in the neighbor’s yard. Mr. York saw his shotgun thrown by one of the men but was unsure of where it landed. Initially, he thought it was in the neighbor’s yard.
Mr. York ran back to the house, where his wife was still talking to the 911 operator. In a state of great excitement, he gave descriptions of the men and their vehicle, *83 which were then dispatched to law enforcement officers.[3]
IsSgt. James Moore of the Caddo Parish Sheriffs Office responded to the call about a burglary in progress with two men and a gun and headed toward the crime scene. At approximately 11:30 p.m., he was about five miles from the York residence, driving west on Blanchard Latex Road, when he was passed by a vehicle matching the broadcast description of the burglars’ car and occupied by two men. Based upon his reasonable suspicion that this was the suspect vehicle, Sgt. Moore turned around and initiated a stop. The defendant, who was driving, was ordered out of the vehicle and patted down by Sgt. Moore. Sgt. Moore checked his driver’s license; the vehicle registration and insurance proof were retrieved from the car for examination. The car was registered to the defendant and a relative. Sgt. Moore walked the defendant to the front of his patrol car. A reserve deputy who arrived on scene got the passenger, Donte Demunguia, out of the car and patted him down. He kept Demunguia at the back of the defendant’s car. Unbeknownst to Sgt. Moore, who was focusing his attention on the defendant, Demunguia gave the deputy permission to open the trunk. As soon as it was opened, the defendant said he did not want his car searched. Sgt. Moore directed the deputy to secure the trunk, which he did.
In the meantime, Mr. York was brought to the scene of the stop. According to his testimony, only 30 to 45 minutes had passed since the incident at his home. He positively identified first the car and then the two men. Following the identification, the officers determined that they had probable cause to arrest the men, and a decision was made to tow the car to the impound lot. According to Sgt. Moore’s testimony, an inventory search of the vehicle was conducted before the car was moved. Two shotguns were [4found in the trunk, which was cluttered with numerous items, including shoes, boots, clothing and various bottles. The shotguns—Mr. York’s unloaded Smith & Wesson shotgun and a loaded Remington Model 870 20-gauge shotgun owned by Demunguia—were removed by Corp. John McCain, a crime scene investigator. Mr. York, who was still at the scene of the stop, identified his stolen shotgun.
Subsequently, a search warrant was obtained by Detective Purgerson, and a more thorough search of the impounded car was conducted. A plastic bag was found under the spare tire; it contained a 9 mm Ruger pistol, two black gloves, a long-sleeve black shirt, a black hood, and a chisel. Crime lab testing of these items revealed the defendant’s DNA on the gloves. While Demung-uia was excluded as the source of DNA on any of the items, the defendant could not be excluded as to the hood and the shirt. Law enforcement officers learned that the pistol had been reported stolen in Texas.
The defendant and Demunguia were charged with aggravated burglary. The de *84 fendant, who had a 2012 conviction for attempted armed robbery, . was also charged with possession of a firearm by a convicted felon. In January 2016, Demung-uia pled guilty to simple burglary and agreed to testify against the defendant.
The defendant’s attorney filed a motion in limine to exclude any reference to the pistol recovered from the. defendant’s trunk as having been stolen. The motion was argued at a hearing on March 1, 2016; the court deferred ruling until March 7, 2016, when trial was set to commence. At that time, the court granted the motion.
| ^Defense counsel also filed a motion to suppress and, alternatively, motion for a free and voluntary hearing, and/or a motion in limine as to the defendant’s statement to the police. The state agreed it would not use the statement, except for rebuttal purposes, and defense counsel deemed that motion satisfied.
On the first day of trial, the defendant filed a pro se pleading entitled “Motion of Ineffective Counsel,” in which he claimed that his appointed attorney threatened him “with intimidation” to take a plea deal and failed to file pretrial motions “that were essential to defendant charges, as well as victim/witness(s) testimony.” He requested that his attorney be relieved and that the court assign “adequate,” “competent” counsel. The trial court allowed the defendant to argue the matter in open court; it then denied the motion. Additionally, the state declined the defendant’s offer to plead guilty to attempted possession of a firearm by a convicted felon and serve four years at hard labor in exchange for the state dropping the other charge and not filing a habitual offender bill.
After lunch, the defendant refused to return to court or to wear a leg restraint device under his civilian clothing, which would “lock up” if he attempted to run. Despite the urging of the deputies and his own attorney, the defendant insisted that he wanted to stay downstairs in the jail. Court was continued, over the state’s objection, until the following morning on the motion of defense counsel.[4] The defendant was present when the trial presumed the next day. He- again complained of the trial court’s denial of his pro se motion. He now contended that his counsel should have filed a motion -to suppress an illegal search of his car. The trial court reiterated its prior denial of the motion.[5] The -defendant then expressed interest in a five to six year plea agreement; however, the state rejected that offer,
"In addition to the victims, crime lab personnel and various law enforcement officers, the state presented the testimony of the defendant’s accomplice, Demunguia. Although his version of the events differed somewhat from Mr. York’s testimony, his testimony placed the defendant at the scene. He testified that the burglary was the idea of the defendant, who was his girlfriend’s cousin and a recent acquaintance. He admitted that, while he brought his own shotgun that night, the defendant was the one wearing the ski mask and gloves. According to his testimony, the de *85 fendant was about to open the door to the Yorks’ residence when Mr. York came around the side of the house with a flashlight and a shotgun. He and the defendant tried to hide behind trees. He testified that Mr. York told him to not move and that the defendant then pushed or tackled Mr. York. He .also stated that, after.they fled from the Yorks’ yard, the deféndant put Mr. York’s shotgun in the back seat of the car, and that he placed his shotgun there also. However, he testified that, after they drove away, the defendant stopped the car so Demunguia could put the shotguns in the trunk. According to his testimony, they were pulled over by the police five to six minutes after they resumed driving,
17Puring his testimony about the items recovered from the defendant’s car, Corp. McCain inadvertently made a reference to the pistol being reported stolen in Texas. The defendant’s motion for mistrial was denied, and the trial court admonished the jury to disregard the remark.
The defendant was convicted of the responsive verdict of attempted aggravated burglary and as charged on the firearm charge. Defense counsel filed a motion for post-verdict judgment of modification of verdict, which was denied.
Due to the defendant’s prior felony conviction, the state filed a habitual offender bill of information. Defense counsel filed a motion to quash the multiple offender bill of information, which was denied, and a sentencing statement which set forth mitigating factors in the defendant’s favor. After the defendant was adjudicated a second felony offender, the trial court sentenced him to 15 years at hard labor without benefit of probation or suspension of sentence, pursuant to La. R.S. 15:529.1, on the burglary charge. On the firearm charge, he was sentenced to ten years at hard labor without benefit of parole, probation, or suspension of sentence, under La. R.S. 14:96,1. The sentences were ordered to be served concurrently.[6] Defense counsel filed a motion to reconsider sentence, which was denied. •
' On appeal, the defendant asserts an ineffective assistance of counsel claim and error in the denial of his motion for mistrial.
. ^INEFFECTIVE ASSISTANCE OF COUNSEL
In two assignments of error, the defendant claims that the trial court erred in denying his pro se motion to replace his appointed trial counsel due to ineffective assistance and in failing to hold an eviden-tiary hearing on the issue. He also contends that his attorney was ineffective because he failed to file motions to suppress based upon the search of the car .and Mr. York’s identification.

Right to Effective Counsel

The Sixth and Fourteenth Amendments to the United States Constitution guarantee accused persons the right to effective assistance of counsel in a criminal prosecution. State v. Thomas, 2012-1410 (La. 9/4/13), 124 So.3d 1049; State v. Joshua, 50,566 (La.App. 2 Cir. 8/10/16), 201 So.3d 284. If a defendant is indigent, he has the right' to court-appointed counsel; however, an indigent defendant does not have the right to have a particular attorney appointed to represent him. State v. Harper, 381 So.2d 468 (La. 1980); State v. Diggs, 43,740 (La.App. 2 Cir. 12/10/08), 1 So.3d 673, writ denied, 2009-0141 (La. *86 10/2/09), 18 So.3d 101. A criminal defendant who has been appointed counsel has no right under the Sixth Amendment to the counsel of his choice. State v. Reeves, 2006-2419 (La. 5/5/09), 11 So.3d 1031, cert. denied, 558 U.S. 1031, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009). An accused’s unquestioned right to legal representation at trial cannot be manipulated by him, by attempts at last minute substitution or otherwise, so as to secure unwarranted delays or otherwise obstruct the orderly administration of justice. State v. Higginbotham, 46,975 (La.App. 2 Cir. 4/25/12), 122 So.3d 1, writ denied, |92012-1718 (La. 5/24/13), 116 So.3d 658; City of Baton Rouge v. Dees, 363 So.2d 530 (La. 1978).
A claim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Moore, 48,769 (La.App. 2 Cir. 2/26/14), 134 So.3d 1265, writ denied, 2014-0559 (La. 10/24/14), 151 So.3d 598. The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Joshua, supra; State v. Bailey, 49,362 (La.App. 2 Cir. 11/19/14), 152 So.3d 1056, writ denied, 2014-2645 (La. 10/2/15), 178 So.3d 988, cert. denied, — U.S. -, 136 S.Ct. 1204, 194 L.Ed.2d 210 (2016); State v. Grant, 41,745 (La.App. 2 Cir. 4/4/07), 954 So.2d 823, writ denied, 2007-1193 (La. 12/7/07), 969 So.2d 629. The filing of pretrial motions is squarely within the ambit of an attorney’s trial strategy. Counsel is not required to engage in futility. State v. LeBeau, 621 So.2d 26 (La. App. 2 Cir. 1993), writ denied, 629 So.2d 359 (La. 1993). The fact that a particular strategy is unsuccessful does not establish ineffective assistance. State v. Moore, supra.
Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra; State v. Moore, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Bailey, supra. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Moore, supra. The failure of counsel to make meritless objections or file futile motions is not ineffective assistance. State v. Bailey, supra.
Generally, a claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief (“PCR”) in the trial court. This is because PCR creates the opportunity for a full *87 evidentiary hearing under La. C. Cr. P. art. 930. State v. Mansfield, 50,426 (La. App. 2 Cir. 2/24/16), 190 So.3d 322. When the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy. State v. Smith, 49,356 (La.App. 2 Cir. 11/19/14), 152 So.3d 218, writ denied, 2014-2695 (La. 10/23/15), 179 So.3d 597. However, in extraordinary circumstances, appellate courts have taken a third approach on appeal and remanded an | , ineffective assistance claim for an evidentiary hearing. State v. Mansfield, supra.

Car Search Issues

The defendant contends that trial counsel was ineffective because he failed to file a motion to suppress the evidence found in the car trunk. He asserts before us on appeal that there was a nonconsensual search of the trunk on the night of his arrest, which taints the post-arrest search, as well as a subsequent search with a warrant based on “false representation” by the detective who secured the warrant. As to these contentions, we find that the record before us is not sufficiently developed to allow this court to rule upon them at this point in the proceedings. The evidence adduced at the trial was not designed to address the arguments now being made pertaining to the search and seizure issues. While it seems highly unlikely that a motion to suppress would have been successful,[7] we do not believe that this record contains sufficient information to rule on these issues at this time. Although the defendant’s appellate counsel requests that the matter be remanded to the trial court for an immediate hearing on these issues, such action is warranted only under extraordinary circumstances. No such circumstances are found in the instant case. Accordingly, we pretermit consideration of the defendant’s arguments pertaining to the car search and the failure to file a | ^motion to suppress. In due course, the defendant may raise these contentions on PCR. If warranted, the record can then be more fully developed at an evidentiary hearing, at which the defendant’s trial counsel will also be given the opportunity to explain his trial strategy.

Identifícation Issue

We do find that the record is sufficiently developed on the matter of Mr. York’s on-site identification of the defendant as one of the two men in his yard. Simply put, there is no legal basis to support the filing of a motion to suppress the identification, and the defendant’s contention that his counsel was ineffective in failing to file such a motion is groundless.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Even if the identification could be suggestive, it is the likelihood of misidentification which violates due process, not merely the sugges *88 tive identification procedure. State v. Odom, 47,379 (La.App. 2 Cir. 8/8/12), 104 So.3d 61, writ denied, 2012-1994 (La. 3/15/13), 109 So.3d 373. To prove a violation of due process, a defendant must first show that the identification procedure was unnecessarily suggestive and, second, that there was a substantial likelihood of mis-identifícation. Admitting evidence of a suggestive identification procedure does not violate due process if the identification is rehable. State v. Womack, 47,639 (La.App. 2 Cir. 1/16/13), 109 So.3d 418, writ denied, 2013-0304 (La. 9/20/13), 123 So.3d 163.
When assessing the reliability of ah identification, the following factors must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3)| isthe accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. Manson, supra; State v. Odom, supra; State v. Womack, supra.
One-on-one identifications, also known as “show-up” identifications, are not favored; however, under certain circumstances, they are admissible at trial. State v. Odom, supra. Such identifications have been found to be admissible when the identification occurred in close proximity to the time of the offense and the suspect is presented for immediate identification. State v. Robinson, 404 So.2d 907 (La. 1981); State v. Odom, supra. Such prompt confrontations between the defendant and the victim provide fairness by ensuring the reliability of the identification and .the expeditious release of innocent- suspects. State v. Womack, supra.
The testimony adduced at trial established that the identification was made within 30 to 45 minutes after Mr. York had encountered the men outside his home. His testimony demonstrated that he was at close quarters with the men, one of whom held him at gunpoint and disarmed him during a struggle. He had the benefit of a very bright flashlight to see the defendant’s features and observed him holding a roll of duct tape, which was subsequently recovered in the yard by law enforcement personnel. While Mr. York initially described ,the men as white, photos of the defendant—who is black—reveal that he is light-skinned. Mr. York was able to provide law enforcement with an accurate description of the getaway car that led to the quick apprehension of the men at a location in the vicinity of the York home.
We see nothing inappropriate in the identification procedure utilized by the law ■enfQrcement personnel under the circumstances’ presented here. | uThe incident occurred late at night in a rural area. A deputy responding to the 911 call passed a vehicle matching the description provided by the victim. The officer’s decision to bring Mr. York to the scene of the vehicle stop was prudent under the circumstances. The. prompt identification of the getaway vehicle and the perpetrators provided fairness by ensuring the reliability of the identification and the possibility of expeditious release of innocent suspects. Furthermore, nothing in this record indicates that Mr. York has ever waivered in his identification of the defendant as the man he saw in his yard with the roll of duct tape. The “show-up” identification of both the vehicle and the two perpetrators by Mr. York shortly after the- traumatic events at his home was reliable and thus admissible. Since the procedure was proper, we find no merit to the defendant’s claim that trial counsel was ineffective because he failed to file a motion to suppress Mr. York’s identification of him. Counsel is not obliged to file meritless motions.

*89
Plea Bargain Allegations

As to the defendant’s conelusory assertion in his pro se motion that his attorney “on numerous occasions threatened” him “with intimidation” to take a plea bargain, we note that, just prior to the commencement of trial, the defendant himself twice expressed interest in pleading guilty for sentences of either four years or five to six years. However, the state had taken all plea offers off the table in January 2016, and it rejected the late offers made by the defendant. An effort by trial counsel to encourage the defendant— who had a prior felony conviction, which is an aggravating sentencing factor, and who faced the possibility of being adjudicated a habitual offender, resulting in an enhanced sentence—to accept an advantageous plea bargain which h,-,significantly reduced his sentencing exposure can scarcely be construed as an action detrimental to his client’s best interest.
Finally, we note that the defendant’s filing of his pro se motion on the first day of trial appeared—in conjunction with his other actions in refusing to return to the courtroom—to be part of a calculated effort to delay his trial. Under the circumstances of this case, the trial court did not err in denying the motion without an evi-dentiary hearing.
MOTION FOR MISTRIAL
The defendant argues that the trial court erred in denying his motion for mistrial after a police officer inadvertently mentioned that the pistol hidden under the spare tire in his car trunk was stolen when the court had previously granted a motion in limine to exclude that information.

Law

Mistrial is a drastic remedy which is authorized only where substantial prejudice will otherwise result to the accused. State v. Roberson, 46,697 (La.App. 2 Cir. 12/14/11), 81 So.3d 911, writ denied, 2012-0086 (La. 4/20/12), 85 So.3d 1270. The determination of whether actual prejudice has occurred lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. State v. Wilson, 50,589 (La. App. 2 Cir. 5/18/16), 196 So.3d 614; State v. Authier, 46,903 (La.App. 2 Cir. 4/25/12), 92 So.3d 494, writ denied, 2012-1138 (La. 11/2/12), 99 So.Sd 662. Likewise, the determination of whether an admonition will adequately cure any prejudice and assure a fair trial lies within the trial court’s discretion. State v. Parker, 49,009 (La.App. 2 Cir. 5/15/14), 141 So.3d 839.
11fiThe law regarding mistrials on the grounds of improper references to other crimes is well settled. La. C.E. art. 404(B) provides that evidence of other crimes, acts or wrongs is generally not admissible. La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, the district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Roberson, supra. For purposes of La. C. Cr. P. art. 770, a law enforcement officer is not considered a “court official,” and an unsolicited, unresponsive reference to other crimes evidence made by a law enforcement officer is not grounds for a mandatory mistrial under La. C. Cr. P. art. 770. State v. Terry, 47,425 (La.App. 2 Cir. 11/21/12), 108 So.3d 126, writ denied, 2012-2759 (La. 6/28/13), 118 So.3d 1096; State v. Roberson, supra; State v. Ellis, 42,520 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, writ denied, 2007-2190 (La. 4/4/08), 978 So.2d 325. Absent a showing of a pattern of unresponsive answers or improper intent by the law enforcement officer or prosecutor, such com *90 ments would not fall within the purview of mistrial pursuant to La. C. Cr. P. art. 771. State v. Scott, 34,949 (La.App. 2 Cir. 1/25/02), 823 So.2d 960, writ denied, 2002-1622 (La. 5/16/03), 843 So.2d 1122.
La. C. Cr. P. art. 771 sets forth permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made on grounds that do not require automatic mistrial under article 770. It covers remarks or comments made by a witness or person other than the judge, the district attorney or a court official. La. C. Cr. P, art. 775 also sets forth additional permissive grounds for mistrial. Under these articles, mistrial is at the Indiscretion of the trial court and should 'be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Roberson, supra.
Even if a mistrial was warranted under La. C. Cr. P. art. 770, 771, or 775, the failure to grant a mistrial would not result in an automatic reversal of the defendant’s conviction, but would be a trial error subject to the harmless error analysis on appeal. State v. Roberson, supra. Trial error is harmless where the verdict rendered is “surely unattributable to the error.” State v. Wilson, supra.

Discussion

As previously mentioned, immediately prior to commencement of trial, the trial court granted the defendant’s motion in limine to exclude reference to the pistol recovered from the defendant’s trunk as having been stolen. However, when Corp. McCain was questioned by the prosecutor about his role in collecting evidence as a crime scene investigator, the following exchange occurred:
Q. Okay. In regards to that, what was your purpose of collecting those items?
A. They were of evidentiary value for the commission of a crime. Also, Detective Purgerson had recovered a handgun that was reported stolen I believe out of Texas.
Defense counsel objected, and, outside the jury’s presence, moved for a mistrial. Following a conference with the attorneys, the trial court ruled that the witness’s statement did not rise to the level of a mistrial and denied the motion. The court then read to the jury an admonition agreed upon by both sides. It stated:
Admonition: The jury is admonished to disregard any testimony that is extraneous to the evidence in the case. There | TSis no evidence connecting the defendant to the theft of the handgun mentioned by the current witness.
Corp. McCain was not a court official under the mandatory mistrial article, La. C. Cr. P. art. 770. His unsolicited and unresponsive statement referencing the gun’s stolen status was not deliberately elicited by the prosecutor’s question about evidence collection. Nor is there any evidence in this record to suggest that he made the statement with any intent to prejudice the defendant.
Furthermore, the evidence of the defendant’s guilt was overwhelming. He and his ear were positively identified by the victim. The victim’s shotgun, which was forcibly taken from him by the assailants, was recovered from the trunk of the defendant’s car, along with the codefendant’s shotgun, which was used during the offense. The defendant’s accomplice testified against him at trial. In light of these facts, we find that the reference to the pistol hidden in the trunk being stolen was not so prejudicial that it made it impossible for the defendant to obtain a fair trial.
We find no abuse of the trial court’s discretion in ruling that a mistrial was not mandated and that an admonition to the jury was sufficient. This assignment of error is meritless.
*91 ERRORS PATENT
Our review of the record reveals two errors patent. First, the minutes incorrectly state that the sentence for attempted aggravated burglary was to be served “without benefit of probation, parole or suspension of sentence.” The transcript showed that the trial court properly directed that this sentence be served without benefit of probation or suspension of sentence, pursuant to La. R.S. 15:529.1(G). Accordingly, the trial court is instructed to correct |inthis error in the minutes, as the transcript controls over the minutes when there is a conflict. State v. Lynch, 441 So.2d 732 (La. 1983); State v. Clark, 44,594 (La.App. 2 Cir. 8/19/09), 16 So.3d 1256, writ denied, 2009-2106 (La. 8/18/10), 42 So.3d 400.
Second, the defendant’s sentence is illegally lenient because the trial court faded to impose the mandatory fine for possession of a firearm by a convicted felon. See La. R.S. 14:95.1(B), which requires imposition of a fine between $1,000 and $5,000. Pursuant to La. C. Cr. P. art. 882(A), an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. However, as this court has recognized, we are not required to take such action. State v. Pena, 43,321 (La.App. 2 Cir. 7/30/08), 988 So.2d 841. The state did not object to the error and the defendant was not prejudiced in any way by the failure to impose the mandatory fine. Thus, we decline to remand the case for correction of the sentence to include a fine.
CONCLUSION
The defendant’s convictions and sentences are affirmed.
AFFIRMED.

, A recording of the 911 call was admitted into evidence and played for the jury. The recording indicates that the call was received at 11:28 p.m.

. According to the testimony of Detective Matthew Purgerson, the lead investigator on the case, the codefendant, Donte Demunguia, was 6’9” and weighed 220 pounds, while the defendant was 6’ and weighed 165 pounds. However, Demunguia testified that he was 6T0” and weighed 295 pounds.

. According to the 911 call, Mr. York described the vehicle as a dark-colored or navy Dodge and the two men who attacked him as white. He further stated that one of the men was armed and that they had also taken his gun. He was able to say that the men fled east on Lowry Road, but was unable to tell if they turned north or south when they reached Highway 169. Review of the photos of the defendant found on his driver’s license and military identification, which were admitted into evidence, demonstrate that he is a light-skinned black male. As to the car, the trial testimony established that the defendant’s vehicle was a 2012 Chrysler 300. However, Detective Purgerson testified that Dodge and Chrysler cars were very similar in appearance and that both were produced by Chrysler. The photos of the car admitted into evidence showed its unusual dark blue metallic color, which Mr. York recounted in his testimony.

. In’ response to the defendant’s refusal to come to court, defense counsel promptly filed a motion for individual voir dire. regarding 'the defendant's absence from the courtroom during voir dire examination in order to confront any' problem of undue prejudice while preserving the defendant’s right to a fair trial and due process of law. He also filed a motion in limine to bar the state from referring to and/or adducing evidence concerning the defendant’s absence from court at trial.

. The defendant filed a writ application seeking supervisory review of the trial court’s ruling, On May 19, 2016, this court denied the writ, finding that the matter "may be raised at a later time either on appeal or in an application for post-conviction relief, if appropriate.”

. The defendant was further ordered to have no contact with the victims, to stay away from the location of the offenses, to refrain from possessing or owning firearms, and to pay concurrent court costs. The trial court recommended the defendant for any special programs for which he might be eligible, includr ing reentry and work release.

. As cogently argued by the state in its brief before us, under the "inevitable discovery” doctrine, evidence found as a result of an alleged violation of the defendant’s constitutional rights would be admissible if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), The "inevitable discovery” doctrine has been followed by Louisiana courts. State v. Lee, 2005-2098 (La. 1/16/08), 976 So.2d 109, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); State v. McGraw, 43,778 (La.App. 2 Cir. 12/10/08), 1 So.3d 645, writ denied, 2009-0317 (La. 11/6/09), 21 So.3d 297. The state has also presented other arguments in support of the search of the trunk as an exception to the search warrant requirement or as an inventory search.